DAVID A. HUBBERT
Deputy Assistant Attorney General

CHRISTIAN MEJIA
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C.  20044
202-305-7548 (v)
202-307-0054 (f)
Christian.Mejia@usdoj.gov

*Counsel for the United States of America*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>  v.<br><br>Bill H. Brooke; Estate of Shirley J. Brooke; Lori J. Scott, Shasta County Treasurer-Tax Collector,<br><br>  Defendants. | No. 2:22-CV-00960-KJM-CSK<br><br>**[PROPOSED] MODIFIED ORDER GRANTING UNITED STATES' UNOPPOSED MOTION TO APPOINT A RECEIVER TO ARRANGE FOR THE SALE OF THE SUBJECT PROPERTY** |

The United States has filed an Unopposed Motion to Appoint a Receiver to Arrange for the Sale of the Subject Property ("Motion").  In this Motion, the United States has nominated Bobby Schultze of Coldwell Banker Kappel Gateway Realty, Fairfield, California, to be appointed receiver to market and sell a certain parcel of real property.

Judgement was entered on September 23, 2024 pursuant to an order signed on September 19, 2024 (ECF No. 60).

Pursuant to Local Rule 230(g), the Court will take this matter under submission on the papers without oral argument and the October 29, 2024 hearing is vacated.

Order Granting Appointment of Receiver     1

In consideration of the Motion, and for good cause shown, the Court hereby enters this Order Granting United States' Unopposed Motion to Appoint a Receiver to Arrange for the Sale of the Subject Property ("Order").

The Court hereby ORDERS as follows:

1. The Motion is granted.

2. Bobby Schultze of Coldwell Banker Kappel Gateway Realty, Fairfield, California ("Receiver") is APPOINTED to act as the receiver to enforce the tax liens at issue in this case according to the terms set forth below, pursuant to 26 U.S.C. § 7402(a) and § 7403(d).

**PROPERTY SUBJECT TO RECEIVERSHIP**

3. This Order applies to real property commonly known as 10680 Swede Creek Road, Palo Cedro, CA 96073, APN: 061-080-007 ("Subject Property").

4. The Subject Property is more particularly described as follows:

> THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA, COUNTY OF SHASTA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:
>
> Lot 9, as shown on the map of Cow Creek Estates Subdivision, recorded in the office of the County Recorder December 6, 1963 in Book 12 of Maps at page 19, Shasta County Records.

**BILL H. BROOKE**

5. Bill H. Brooke, or any other person occupying the Subject Property, shall permanently vacate the Subject Property no later than 12 months after the entry of this Order ("Twelve-Month Period").

6. If Bill H. Brooke, or any other person occupying the Subject Property, permanently vacates the Subject Property prior to the end of the Twelve-Month Period ("Early Departure Date"), such person shall notify counsel for the United States no later than two business days prior to vacating the Subject Property of the date on which he or she is permanently vacating the Subject Property. Notification shall be made by calling or leaving a message for counsel for the United States, Christian Mejia, at (202) 305-7548.

7. Until the Subject Property is sold, Bill H. Brooke, or any other persons occupying the Subject Property, shall take all reasonable steps necessary to preserve the Subject Property

(including all buildings, improvements, fixtures, and appurtenances thereon) including, without limitation, maintaining fire and casualty insurance policies on the Subject Property. He shall keep current in paying real property taxes as they are assessed. He shall not commit waste against the Subject Property, nor shall he cause or permit anyone else to do so. He shall not do anything that tends to reduce the value or marketability of the Subject Property, nor shall he cause or permit anyone else to do so. He shall not record any instruments, publish any notice, or take any other action that may directly or indirectly tend to adversely affect the value of the Subject Property or that may tend to deter or discourage potential buyers, nor shall he cause or permit anyone else to do so. Violation of this paragraph shall be deemed a contempt of Court and punishable as such

**RECEIVERSHIP**

The Receiver's sale of the Subject Property shall occur according to the following terms:

8. Within two weeks from the end of the Twelve-Month Period, or within two weeks from the Early Departure Date, the Receiver is directed to take custody of the Subject Property (including all improvements, buildings, fixtures, materials, contents, and appurtenances thereon) to preserve and protect the value of the Subject Property, to put it into saleable condition, and to arrange for the sale of the Subject Property, free and clear of any rights, titles, claims, or interests of any of the parties to this action. The Receiver may retain a locksmith or other person to change or install locks or other security devices or any part thereof, until a deed thereto is delivered to the ultimate purchaser(s).

9. The Receiver shall have the authority to, and is directed to, arrange for the sale of the Subject Property subject to confirmation and approval by this Court. The initial listing price may be set by the United States in consultation with the Receiver. If lack of buyer interest or buyer feedback indicates that the listing price is too high, the United States, in consultation with the Receiver, may lower the listing price. The United States shall have the exclusive authority to decide whether to accept an offer or counter-offer for the Subject Property, conditioned on ultimate Court approval of any proposed sale. The terms of any purchase agreement shall include the balance of the purchase price paid in cash or certified check at closing, and shall include an

earnest money deposit, in an amount to be set by the Receiver, forfeitable upon the purchaser's failure to perform.  The terms of any purchase agreement may also include financing options.  Any forfeited earnest money proceeds shall be distributed first to the Receiver to the extent of expenses incurred by the Receiver in accordance with paragraph 10 of this Order, with the remainder to be added to any future sale proceeds when the sale closes, except to the extent the United States, in consultation with the Receiver, agrees that such monies may be used for maintenance, repairs, and/or improvements to the Subject Property.  A purchase agreement may include other customary and reasonable terms in the discretion of the United States, in consultation with the Receiver.  The closing shall not occur until after the sale has first been confirmed and approved by further order of this Court.  At closing, the purchaser or purchasers shall receive a quitclaim deed to the Subject Property, executed by the receiver, that shall be free and clear of all liens, interests, or other claims of the parties to this suit with respect to the Subject Property and with the same to attach to the proceeds in the same order of priority as they have against the Subject Property.

10. The Receiver shall have all of the rights and powers necessary to fulfill his obligations under this Order, specifically including, but not necessarily limited to, the power to enter the Subject Property, to inspect the Subject Property, to advertise the sale of the Subject Property, to show the Subject Property to prospective buyers, to take any action reasonably necessary to protect and preserve the value of the Subject Property prior to sale, and to put the Subject Property into salable condition, including making a total expenditure of funds less than $500 without preauthorization from the United States or, if expenditures in the aggregate total more than $500 first obtaining the authorization from the United States, for reasonable and necessary repairs, maintenance, and minor improvements.

11. Any persons occupying the Subject Property, including Bill H. Brooke, shall leave and permanently vacate the Subject Property no later than the Twelve-Month Period, each taking with them his, her, or its personal property (but leaving all improvements, buildings, fixtures, and appurtenances to the Subject Property).  If any person fails or refuses to vacate the Subject Property by the time specified in this Order, the Receiver is authorized to coordinate with the

United States Marshal's Office, the Shasta County Sheriff's Office, or any other local police department for the Subject Property (collectively, "Law Enforcement") to take all actions that are reasonably necessary to have those persons ejected.  This includes that Law Enforcement is authorized and directed to take any and all necessary actions, including but not limited to the use of reasonable force, to enter and remain on the premises, which includes, but is not limited to, the land, the buildings, vehicles and any structures located thereon, for the purpose of executing this Order.  Law Enforcement is further authorized and directed to arrest and/or evict from the premises any and all persons who obstruct, attempt to obstruct, or interfere or attempt to interfere, in any way with the execution of this Order.  No further order of this Court is necessary to affect this paragraph and a writ of assistance, without further notice, may be issued by the Clerk of Court pursuant to Rule 70 of the Federal Rules of Civil Procedure to compel delivery of possession of the Subject Property to the Receiver to perform his duties under this Order.  Any personal property remaining on the Subject Property 45 days after the Twelve-Month Period or the Early Departure Date, whichever date is earlier, will be deemed forfeited and abandoned, and the Receiver is authorized to dispose of it in any manner seen fit, including sale, in which case the proceeds of that sale are to be applied first to the costs and expenses of such sale and the balance shall be held and added to any future sale proceeds of the Subject Property when the sale of the Subject Property closes for further distribution.  The Receiver shall be responsible for holding and accounting for any funds he receives through any such sale of leftover personal property.  The United States may authorize the Receiver to consult with various experts on the sale of contents inside the Subject Property, including art, furnishings, vehicles, and equipment.  Nothing in this Order shall be construed to restrict or otherwise interfere with the Internal Revenue Service's ability to administratively collect against such personal property, in accordance with the law.

12. The Receiver shall be compensated from the proceeds of the sale of the Subject Property (a) in an amount equal to six percent (6%) of the gross sale proceeds from which the Receiver must pay any buyer broker commission; or if the Receiver finds the buyer himself, without having to involve a separate buyer's agent, in an amount equal to five percent (5%) of the gross sale proceeds; (b) for his reasonable and necessary expenditures under paragraph 10 of this

Order Granting Appointment of Receiver     5

Order (i.e., for repairs, maintenance, minor improvements, and/or insurance) that were first approved by the United States; and (c) with respect to any consultations concerning the sale of personal property that were first approved by the United States under paragraph 11 of this Order, the Receiver is authorized to charge $125 per hour, for these services, limited to no more than 10 hours per month.  The Receiver shall receive payment of the above-described compensation and reimbursement from a distribution from the proceeds of a sale approved by the Court at closing, as a direct cost of sale, and before any net sale proceeds are used to pay the claims of the parties to this action.

13. Once the United States agrees with the Receiver that an offer for sale of the Subject Property should be accepted, the United States shall promptly seek confirmation of the proposed sale from this Court.  This process only requires the United States to file a motion seeking confirmation of the sale with this Court and shall not provide for any reopening of the offer (i.e. the terms or the amount offered) by anyone.

14. If this Court confirms a proposed sale of the Subject Property as described in paragraph 13 of this Order, then the closing of the sale shall be handled by an escrow or title company chosen by the Receiver or potential buyer with the consent of the United States. The closing shall occur only after this Court confirms the sale, but the timing of the closing shall otherwise occur as negotiated by the Receiver and the potential buyer as contained in the offer that this Court confirms. Any order confirming a sale by this Court will make clear that the sale is free and clear of all liens, interests, or other claims of parties to this case with respect to the Subject Property.  Redemption rights under state or local law shall not apply to this sale under federal law.

15. Net proceeds shall be deposited with the Court unless directed otherwise in a sale confirmation order.  Unless already covered in a sale confirmation order, after the closing of a sale of the Subject Property, the United States shall file a request for an order of distribution of the net sale proceeds and determination of order of priority, which shall propose which person and/or entities shall receive payment from the net proceeds and the amount each person and/or

entity shall receive.  The persons and/or entities shall then have an opportunity to respond before the Court issues an order regarding distribution of sale proceeds.

16. All the defendants in this case, and all other persons acting in concert with them, or on their behalf, are hereby restrained and enjoined from doing anything that tends to interfere with or reduce the value or marketability of the Subject Property, or from interfering with the Receiver, or with the Receiver's efforts to comply with his obligations under this Order. Violation of this paragraph shall be deemed a contempt of court and punishable as such.

**IT IS SO ORDERED.**

DATE:  October 11, 2024

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE